HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOSEPH GIBSON,<br><br>               Plaintiff,<br>    v.<br><br>CITY OF VANCOUVER, et al.,<br><br>               Defendants. | CASE NO. C20-6162BHS<br><br>ORDER GRANTING INTERVENTION AND DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER |

THIS MATTER is before the Court on Plaintiff Gibson's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. [Dkt. # 6]. Gibson filed his Complaint [Dkt. # 1] on November 30, and his Motion on December 2.

Gibson alleges he is a "street preacher" and that he has planned and organized a 20-person, outdoor "prayer protest" at a public park in Vancouver, Washington for this Saturday, December 5. The purpose of the event is to protest Washington Governor Inslee's COVID-19 proclamations and guidance [Dkt. # 6-2 at Exs. D–N], which currently restrict gatherings of that size. Gibson alleges the Governor's COVID-19 proclamations are facially unconstitutional because they target religious/spiritual gatherings by placing on them more onerous restrictions

1 than they impose on similar secular activity such as sports, schools, and shopping. [Dkt. # 1 at p.
2 2].

3       Gibson claims to have a reasonable fear that he personally will be "selectively targeted"
4 for arrest or prosecution, due to his involvement with prior COVID-19 protests. This fear is
5 based on what he claims are similar past arrests and prosecutions, specifically of Ms. Kelly
6 Carroll, who was cited for opening her business, Pet-Biz, in violation of COVID-19 restrictions
7 this past spring. Gibson attended a protest of that citation. He claims Carroll was similarly
8 selectively targeted, but there does not seem to be a religious aspect to her business, her decision
9 to open it in violation of the restrictions, or her prosecution.

10       Gibson sued the City of Vancouver, its Mayor, Police Chief, the City Attorney, and the
11 City Manager. His complaint seeks a temporary and permanent injunction precluding the
12 defendants from selectively targeting him for arrest or prosecution based on his position as a
13 leader or organizer of a public protest or prayer. [Dkt. # 1 at p. 47]. His emergency TRO motion
14 repeats these claims, and argues that he faces an actual, imminent threat of irreparable harm
15 because the "defendants have evidenced a clear pattern of targeting leaders of protests against
16 COVID-19 restrictions." [Dkt. # 6 at p. 8].

17       **III. DISCUSSION**

18       Leaving aside the apparent mis-match between the claims Gibson asserts, the relief he
19 seeks, and at least some of the parties he seeks to enjoin, there are at least three deficiencies in
20 his pending request for a temporary restraining order.

21       The first is that the "emergency" nature of the filing is wholly of Gibson's own making:
22 he alone scheduled the protest prayer event and sued just five days before the date he selected.
23 His Complaint is 50 pages long, with another 200 pages of exhibits. Two days later, and just
24

three days before the event, he filed his 25-page Emergency Motion. Without concluding that he did so for strategic reasons, the timing of Gibson's motion has given the defendants no reasonable opportunity to respond. He has also made it more difficult for the court to prepare for, schedule, and conduct a hearing in advance of the event.

Second, it is apparent from his filings that Gibson does not have standing to sue. Courts in this Circuit consider three factors to determine whether a pre-enforcement challenge to a law is justiciable: (1) "whether the plaintiff [has] articulated a 'concrete plan' to violate the law in question"; (2) "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings"; and (3) "the history of past prosecution or enforcement under the challenged [law]." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).

Gibson has established that he has a concrete plan to violate the Governor's COVID-19 proclamations; that is apparently the purpose of his December 5 prayer protest. But he has not demonstrated that any of the Defendants he sued have communicated a specific warning or threat to initiate any proceedings against him if he carries out his plan. Gibson claims primarily that City Attorney Young previously urged others to arrest and prosecute him for "intimidating a public official," after he participated in an armed protest of Carroll's prosecution, in front of Young's home. But that can hardly be construed as a threat by Young to prosecute[1] Gibson for holding prayer protest in a public park. Young's "threat" did not relate to COVID-19 or the Governor's proclamations. Gibson does not claim or demonstrate that any of the other

---

[1] The unrelated dispute among Young, Police Sgt. Moore, Gibson, Gibson's attorney (Mr. Lee), and Lee's former client, Kelly Carroll, does not appear to be relevant to this case. If it is, Mr. Lee might well be a witness.

Defendants have threatened to cite, arrest, or prosecute him, at all, and certainly not for organizing or leading the prayer protest event he plans to conduct.

Nor has Gibson demonstrated that any of the Defendants have a history of past prosecution or enforcement of the COVID-19 restrictions. He relies solely on Carroll's prosecution, which was dropped, and which seemingly had nothing to do with her First Amendment right to the free exercise of religion. Indeed, Gibson concedes that even last spring, there were 15,000 complaints about businesses in Vancouver violating the COVID-19 restrictions which were *not* prosecuted. [Dkt. # 6-2 at p. 11]. Gibson has pointed to only one instance of any Defendant prosecuting someone for violating the COVID-19 restrictions, and that prosecution was dropped. Carroll was not engaged in and was not targeted for conducting a religious protest like the one Gibson plans. Gibson has not established that anyone "selectively targeted" a religious gathering.

Gibson's claims are instead akin to those at issue in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). There, plaintiff Lyons sued to enjoin the police from again using a chokehold on him. The Supreme Court held he did not have standing to do so because he could not show he would be arrested or subjected to a chokehold in the future: "Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Lyons*, 461 U.S. at 111 (citations omitted). Gibson's generalized claims against the Governor's COVID-19 Proclamations as presently pled are hypothetical, are not ripe, and are not justiciable.

Finally, Gibson's Motion does not directly address the standard for obtaining injunctive relief in this Circuit, and he has not demonstrated that he has met that standard.

1        A TRO's purpose is "preserving the status quo and preventing irreparable harm just so

2 long as is necessary to hold a hearing [on the preliminary injunction application], and no longer."

3 *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423,

4 439 (1974); *see also Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130–31 (9th Cir. 2006).

5 For a court to grant a preliminary injunction, the plaintiff "must establish that he is likely to

6 succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

7 relief, that the balance of equities tips in his favor, and that an injunction is in the public

8 interest." *Winter v. Nat. Res. Def. Council*, Inc., 555 U.S. 7, 20 (2008). The last two factors

9 merge if the government is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th

10 Cir. 2014). When considering whether to grant this "extraordinary remedy, . . . courts must

11 balance the competing claims of injury and consider the effect of granting or withholding the

12 requested relief, paying particular regard to the public consequences." *Winter*, 555 U.S. at 24.

13        Other than alleging the Governor's COVID-19 restrictions are facially unconstitutional

14 because they target religion, Gibson has not asserted a specific claim for relief against any

15 defendant.[2] He has not demonstrated that he is likely to succeed on his claim against any

16 defendant; has sued them because he is afraid they will violate his constitutional rights in the

---

[2] Governor Inslee and Attorney General Ferguson have moved to Intervene under Fed. R. Civ. P. 5.1, to defend the constitutionality of the COVID-19 restrictions. [Dkt. # 13]. That Motion is **GRANTED**.

The intervenors point out that, other than his plan to engage in singing, Gibson's planned event would not necessarily violate the Governor's public health measures.
*See* Office of the Governor, *Religious and Faith-based Organizations COVID-19 Requirements* at 1 (revised Dec. 2, 2020) (Religious Guidance), available online at:
https://www.governor.wa.gov/sites/default/files/COVID19%20Phase%201%20to%203%20Religious%20and%20Faith%20Based%20Organization%20Guidance.pdf.

Thus, Gibson's motion may also be moot.

1  future. Even if he had standing to assert it, Gibson has not established that he is likely to succeed

2  on the merits of that claim against any defendant. Absent such a showing, he is not entitled to

3  injunctive relief.

4      For each of these reasons, Gibson's Emergency Motion for a Temporary Restraining

5  Order [Dkt. # 6] is DENIED.

6      The Motion to Intervene [Dkt. # 13] is GRANTED.

7      **IT IS SO ORDERED.**

8      Dated this 3rd day of December, 2020.

                                      BENJAMIN H. SETTLE
                                      United States District Judge