|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | WESTERN DISTRICT OF WASHINGTON AT TACOMA | |

| | | |
|---|---|---|
| JOSEPH GIBSON, | | CASE NO. 3:20-cv-06162BHS |
| | Plaintiff, | |
| v. | | ORDER DENYING MOTION FOR RECONSIDERATION |
| CITY OF VANCOUVER, et al., | | |
| | Defendants. | |

THIS MATTER is before the Court on Plaintiff Gibson's Motion for Reconsideration [Dkt. # 16] of the Court's Order [Dkt. # 14] denying his Motion for a Temporary Restraining Order [Dkt. # 6] and granting Governor Inslee's and Attorney General Ferguson's Motion to Intervene [Dkt. # 13].

Gibson sued the City of Vancouver, its City Manager, Mayor, Police Chief, and City Attorney (the City Defendants), claiming the Governor's COVID-19 Proclamations, Executive Orders and Guidance (Guidance) are facially unconstitutional because they treat secular conduct more favorably than they do religious conduct. [Dkt. # 1]. He sought broad temporary, preliminary, and permanent injunctions against the City Defendants, prohibiting them from "selectively targeting" him for arrest or prosecution based on his position as a leader or organizer of public protest or prayer. [Dkt. #s 1 (complaint) and 6-3 (proposed TRO)]. Gibson moved for a temporary restraining order enjoining the City Defendants from arresting or prosecuting him in connection with his planned December 5 prayer protest in a Vancouver park. [Dkt. # 6].

The Court denied Gibson's Motion for a TRO for two substantive reasons: (1) his pre-enforcement challenge to the Governor's Guidance was not justiciable under *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000), and (2) he had not demonstrated that he was likely to succeed on the merits of his claim against any defendant, as he was required to do under *Winter v. Nat. Res. Def. Council*, *Inc.*, 555 U.S. 7, 20 (2008). The Court also permitted the Governor and the Attorney General to intervene to defend the constitutionality of the COVID-19 Guidance. [Dkt. # 14].

Gibson's December 5 event took place without an arrest or prosecution. Gibson amended his Complaint, [Dkt. # 15], claiming the "City defendants conspired to create a policy specifically designed to suppress and chill anti-lockdown protest by selectively targeting anti-lockdown protest leaders for investigation and enforcement of criminal law." [Dkt. # 15 at ¶4.299, p. 50]. He continues to seek injunctive relief against the City Defendants, and he seeks a Declaratory Judgment that the Governor's Guidance is facially unconstitutional (though he has not sued the Governor, and objects to his intervention in the case). [Dkt. # 15 at ¶7.3, p. 59].

Gibson asks the Court to reconsider its prior ruling because it was manifestly erroneous in three ways. First, he argues, his claim was not mooted by the Governor's modifications to the COVID -19 Guidance. It is true that "mere cessation of illegal activity in response to pending litigation does not moot a case, unless the party alleging mootness can show that the allegedly wrongful behavior could not reasonably be expected to recur." *Rosemere Neighborhood Ass'n v. U.S. Environmental Protection Agency*, 581 F.3d 1169, 1172 (9th Cir. 2009) (quoting *Friends of the Earth, Inc. v.*

1 *Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). *See also Roman Catholic Diocese v. Cuomo*, 208 L. Ed. 2d 206 (2020) (New York Governor's revision of unconstitutional COVID-19 restrictions did not moot challenge to those restrictions). But mootness was not the basis for the court's ruling.

Second, Gibson argues he has standing and that his pre-enforcement challenge is justiciable under *Thomas*, because, on August 6, 2020, the City Attorney and Police Chief communicated a specific threat to prosecute event organizers like him "if evidence suggests a willful violation of the Governor's Order." [Dkt. # 6-2, at pp. 172-173, Ex. Z]. He argues he has demonstrated a history of enforcement because Vancouver has already undertaken four enforcement actions against civic and spiritual gatherings in the eight months since COVID-19 Guidance first went into effect. [Dkt. # 16 at p. 5 (citing the prosecution of Kelly Carroll)].

Third, Gibson argues he is "assured of success on the merits" of his claim that the Governor's Guidance is unconstitutional because it discriminates against religious gatherings and cannot survive strict scrutiny.

Gibson also opposes the Governor's intervention in the case, arguing that Fed. R. Civ. P. 5.1(a) only applies when a statute's constitutionality is questioned, and the Guidance is not a statute. He argues that the City can adequately defend the constitutionality of the Governor's Guidance.

Under Local Rule 7(h)(1), motions for reconsideration are disfavored, and will ordinarily be denied unless there is a showing of (a) manifest error in the ruling, or (b) facts or legal authority which could not have been brought to the attention of the court

earlier, through reasonable diligence. The term "manifest error" is "an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." Black's Law Dictionary 622 (9th ed. 2009).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). Neither the Local Civil Rules nor the Federal Rule of Civil Procedure, which allow for a motion for reconsideration, is intended to provide litigants with a second bite at the apple. A motion for reconsideration should not be used to ask a court to rethink what the court had already thought through—rightly or wrongly. *Defenders of Wildlife v. Browner*, 909 F.Supp. 1342, 1351 (D. Ariz. 1995).

Mere disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision. *Haw. Stevedores, Inc. v. HT & T Co.*, 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

Against these standards, the Court will not Reconsider its prior ruling.

1      *First*, Gibson has not established that he has standing to assert a pre-enforcement
2  challenge against these defendants. Courts evaluate the justiciability of such a claim
3  under the *Thomas* factors: (1) whether the plaintiff has articulated a 'concrete plan' to
4  violate the law in question; (2) whether the prosecuting authorities have communicated a
5  specific warning or threat to initiate proceedings; and (3) the history of past prosecution
6  or enforcement under the challenged law. *Thomas,* 220 F.3d at 1134.

7      Gibson no longer has a concrete plan to violate the Governor's Guidance. He sued
8  to enjoin the City defendants from arresting or prosecuting him for his then-planned
9  December 5 prayer protest. That event occurred, and he was not arrested or prosecuted. A
10 general intent to violate a law in the future does not rise to the required level of an
11 articulated, concrete plan. *Id.* at 1139. Indeed, the State Intervenors argue that even the
12 prayer protest (including outdoor singing) Gibson planned and apparently conducted on
13 December 5 did not violate the current Guidance. Gibson does not even claim he intends
14 to hold another one. Any claim based on vague plans to violate the Guidance in the future
15 is speculative and hypothetical, not concrete.

16     Nor has Gibson established a specific threat of prosecution for violating the
17 Guidance. The City Attorney's and Police Chief's August statement did not threaten to
18 "selectively target" religious gatherings, or their organizers, and it was not aimed at him.
19 The cases he relies upon are not analogous; they involved direct threats of enforcement
20 against the plaintiff. In *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000), the
21 defendant liquor control board officials attempted to prevent LSO from holding its annual
22 Erotic Art Exhibition by threatening to sanction venues that allowed LSO to display its

art, including revoking their liquor licenses. *Id.* In *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1237 (9th Cir. 2018), the President publicly and expressly threatened to enforce an Executive Order "defunding" San Francisco, by name. Gibson cannot point to an analogous specific threat by any City Defendant to selectively target him for prosecution for violating the Guidance.

Perhaps most convincingly, Gibson has not demonstrated *any* history of enforcement of the Guidance against religious activity by any defendant, and certainly not "selective targeting" of himself or others opposing the Guidance as an unconstitutional infringement on religious rights. Despite receiving many thousands of complaints[1] about violations of COVID-19 Guidance and orders, Vancouver has referred only four persons for prosecution, all while Clark County was in "Phase 1," this past spring. Only one, Kelly Carroll, was prosecuted, and her alleged conduct was not religious in nature. In any event, her prosecution was dismissed with prejudice, and no one has since been arrested or charged for violating the Guidance, for any reason, despite the fact the Guidelines have been "commonly and notoriously violated," in Vancouver and elsewhere. *Cf. Libertarian Party v. Bowen*, 709 F.3d 867 (9th Cir. 2013).

---

[1] Gibson's Amended Complaint alleges and purports to demonstrate that Vancouver has a "general policy" of not enforcing COVID-19 Guidance when it receives social distancing complaints—it had received 15,000 such complaints by April—and of referring complaints about business violations to the Health Department, rather than the police. [Dkt. # 15 at p. 32, ¶ 4.159].

But this undermines, rather than bolsters, his claim that the City will selectively enforce the Guidance against him because his planned violation has a religious component. The City has not referred him or any other such violator for prosecution, and it claims without rebuttal that it has no intention of doing so. [*See* Assistant Chief Price's Declaration, Dkt. # 20].

1    On these facts, Gibson is no more entitled to an injunctive relief than Mr. Lyons
2 was entitled to an injunction barring the Los Angeles Police Department from using a
3 chokehold against him in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111
4 (1983) ("a federal court may not entertain a claim by any or all citizens who no more than
5 assert that certain practices of law enforcement officers are unconstitutional.").

6    There is no evidence supporting Gibson's claim the City Defendants have
7 "selectively targeted" those holding spiritual gatherings for prosecution under the
8 Guidelines. The demonstrable lack of prosecutions—much less targeted ones—also
9 undermines Gibson's claim that he is likely to suffer irreparable harm in the absence of a
10 temporary restraining order prohibiting such prosecution, discussed below.

11    Gibson's pre-enforcement challenge to the City Defendants' anticipated
12 enforcement of the Governor's COVID-19 Guidance is not justiciable under *Thomas*, and
13 his Motion for Reconsideration on that basis is DENIED.

14    ***Second***, Gibson has not met his *Winter* obligation to demonstrate that he is likely
15 to succeed on the merits of his claim and that he is likely to suffer irreparable harm in the
16 absence of injunctive relief. Gibson's Motion for Reconsideration does not address
17 *Winter*. The bulk of his Reply [Dkt. # 25 at pp. 3–10] addressees the State's arguments
18 about the constitutionality of the Guidance. He claims that under *Roman Catholic*
19 *Diocese v. Cuomo*, 208 L. Ed. 2d 206 (2020), and *Calvary Chapel Dayton Valley v.*
20 *Sisolak*, No. 20-16169 (9th Cir. Dec. 15, 2020), he "will prevail on the merits" of his
21 claim that the Governor's Guidance impermissibly infringes on religious liberty.
22

While Gibson seeks a declaratory judgment to that effect, he did not assert that claim against the Governor or the Attorney General. And that is not the claim upon which he seeks a TRO. Instead, he seeks to currently enjoin the City Defendants from "selectively targeting" him for arrest or prosecution in the future—for *anything*—based on his status as the organizer of prayer protests like the one he held on December 5.

As discussed above, there is no evidence the City Defendants have selectively targeted anyone for prosecution, and certainly none that they have selectively targeted those conducting religious gatherings. Other than arguing his claim is not moot and that he has standing to assert it, Gibson has still not addressed the requirement that in order to obtain injunctive relief against a defendant, he must show that he is likely to succeed on the merits of his claim against that defendant.

Even if he can prevail on his claim that the Governor's COVID-19 Guidance is facially unconstitutional because it impinges on religious liberty, Gibson cannot prevail on that claim against the City Defendants or force them to alter the Governor's Guidance. Gibson has not demonstrated that he is likely to prevail on the merits of his "selective enforcement in the future" claim he asserts against the City Defendants.

Nor has Gibson met his burden of showing that in the absence of injunctive relief against these defendants, he is likely to suffer irreparable harm. He correctly argues that the loss of First Amendment freedoms, even for a short time, is an irreparable injury. [Dkt. # 25 at p. 9 (citing *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014))]. But he has not shown any likelihood that the City Defendants will deprive him of his First Amendment rights in the absence of a TRO.

Gibson has not met his burden of demonstrating that he is likely to succeed on the merits of his claims against the City Defendants and that he is likely to suffer irreparable harm if they are not enjoined. His Motion for Reconsideration of the Court's Order on this basis is DENIED.

*Finally*, the City Defendants "take no position" on the constitutionality of the Governor's COVID-19 Guidance. [Dkt. # 19 at p. 2, n. 1]. The Court will not reconsider its Order permitting the Governor and the Attorney General to Intervene as defendants to defend the constitutionality[2] of that Guidance.

Gibson's Motion for Reconsideration [Dkt. # 16] is DENIED. The parties should confer and provide the Court a Joint Status Report outlining their respective views on "next steps" in the case. They should do so by January 22, 2021.

IT IS SO ORDERED.

Dated this 23rd day of December, 2020.

BENJAMIN H. SETTLE
United States District Judge

---

[2] The Court has previously accepted the Governor's argument because that he lacked any connection to the enforcement of his Guidance, the court did not have jurisdiction to enjoin him from doing so. *See, for example, MacEwen v. Inslee*, No. C20-5423 BHS, 2020 WL 4261323, at *2 (W.D. Wash. Jul. 24, 2020) (Under *Ex parte Young*, 209 U.S. 123 (1908), Governor lacked enforcement connection to COVID -19 Guidance). But the State (specifically the Attorney General) is the appropriate party to defend a state law's constitutionality.