UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSEPH GIBSON,

Plaintiff,

v.

CITY OF VANCOUVER, et al.,

Defendants.

CASE NO. C20-6162BHS

ORDER

THIS MATTER is before the Court on the following motions: Intervenor-Defendants Jay Inslee and Bob Ferguson's Motion to Dismiss, Dkt. 29; the City of Vancouver Defendants' Motion for Summary Judgment, Dkt. 31; Plaintiff Joseph Gibson's Motion for Leave to File a Second Amended Complaint, Dkt. 36; Gibson's Motion for a Preliminary Injunction, Dkt. 46; and Gibson's Motion for Leave to Supplement the Declaration in support of his Motion for a Preliminary Injunction, Dkt. 56.

The Court has considered all the materials submitted, and the remainder of the file. Because Gibson cannot establish a specific threat of enforcement or a history of

prosecution, he does not have standing. Accordingly, the Defendants' dispositive motions are GRANTED, Gibson's substantive motions are DENIED, and the matter is dismissed.

## I. BACKGROUND

The parties and the Court are familiar with the factual and procedural history of this dispute through prior, thorough briefing on Gibson's initial motion for a Temporary Restraining Order ("TRO"), Dkt. 6, the Order denying that motion, Dkt. 14, Gibson's Motion for Reconsideration, Dkt. 16, and the Order denying that motion, Dkt. 17.

In short, Gibson alleges he is a Vancouver "street preacher" organizing prayer protests of the Governor's COVID-19 proclamations and guidance. He asserts that the State's COVID-19 restrictions are facially unconstitutional because they target religious activities and that the City of Vancouver selectively targets religious protesters for arrest and prosecution for violating COVID-19 guidelines. Dkts. 1, 15.

On November 30, 2020 he sued the City of Vancouver and its Mayor, Police Chief, City Attorney, and City Manager (hereinafter "City Defendants"), seeking a TRO broadly enjoining them from arresting or prosecuting him based on his position as a leader or organizer of a religious COVID-19 prayer protest he had planned for the following Saturday, December 5, 2020. Dkts. 1, 6.

The Court denied Gibson's motion for a TRO because he did not have standing to assert a pre-enforcement challenge under *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134, 1139 (9th Cir. 2000), and because he could not establish that he was likely to succeed on the merits of his claims. It also permitted Governor Inslee and Attorney General Ferguson to intervene in the case. Dkt. 14.

Gibson's December 5 event took place at a Vancouver park without incident or arrest. Two days later, Gibson filed an amended complaint, Dkt. 15, and a Motion for Reconsideration, Dkt. 16. The Court also denied that motion, again because Gibson's amended complaint demonstrated he did not have standing and because he could not demonstrate that he was likely to succeed on the merits of his claims. Indeed, his event had taken place without any arrests or citations and he did not have a concrete plan to hold another. Dkt. 28.

Gibson's operative amended complaint asserts that the Governor's various COVID-19 Executive Orders and proclamations are facially unconstitutional because they place greater restrictions on religious gatherings than they do on analogous secular conduct. Dkt. 15, ¶ 1.2. It asserts that the City Defendants "conspired to create a policy specifically designed to suppress and chill anti-lockdown protest by selectively targeting anti-lockdown protest leaders for investigation and enforcement of criminal law." *Id.* ¶ 4.299.

The State Intervenor-Defendants seek dismissal of Gibson's amended complaint under Fed. R. Civ. P. 12(b)(1), arguing the Court does not have subject matter jurisdiction because Gibson lacks standing and because his claims are moot. They also argue that Gibson has failed to state a plausible claim under Rule 12(b)(6). Dkt. 29.

The City Defendants seek summary judgment on Gibson's claims. They argue that there is no evidence supporting Gibson's conclusory allegations about threats of prosecution, a history of prosecution, or any "selective targeting" of Gibson or any other

religious protester. Dkt. 31. They assert that Gibson lacks Article III standing as a matter of law.

In response, Gibson seeks leave to amend his Complaint a second time. Dkt. 36. His proposed amended complaint does not add claims or defendants but includes new factual allegations at ¶¶ 4.356–4.387. The new allegations generally reflect Gibson's claim that the Governor's COVID-19 guidance has made him feel like a second-class citizen and has caused the community to express hostility toward him. He alleges he "fears that the Governor will close down all houses of worship and reduce all worship gatherings to groups no larger than five." Dkt. 36, ¶ 4.473. Gibson concedes that he has since held numerous protests like his December 5 event without incident or arrest and that he intends to continue to do so two or three times every month, indefinitely, but his proposed complaint alleges that the restrictions have caused others to refrain from participating. It alleges that "when 99% of humans cease an activity in direct response to a government restriction, the cessation of that activity (i.e. being chilled from doing that activity) is objectively reasonable." *Id.* ¶ 4.387.

Gibson also renews his request for injunctive relief, seeking this time a Preliminary Injunction precluding all defendants from enforcing COVID-19 restrictions on religious activity on public property or singing outdoors during religious activity. He claims the restrictions are subject to, and cannot survive, strict scrutiny. Dkt. 46 (citing Justice Gorsuch's statement in *S. Bay Pentecostal Church v. Newsom*, ___U.S.___, 141 S. Ct. 716, 717 (2021)).

Finally, Gibson moves under Rule 15(d) for Permission to Supplement the Declaration in support of his motion for a preliminary injunction. Dkt. 56. He asks the Court to consider a press release and a newspaper article about the Governor's revised COVID-19 Guidance. It is unclear to which Declaration the motion refers (the Motion for a Preliminary Injunction itself is not accompanied by a Declaration or otherwise supported by new evidence), but Attorney Lee's earlier Declaration, Dkt. 26, attached a similar press release about prior COVID-19 Guidance. The City Defendants and State Intervenor-Defendants correctly point out that a declaration in support of or in opposition to a motion is not a "pleading" under Rule 7(a) and that Rule 15(d) applies only to supplemental pleadings. That conclusion means that a supplemental declaration is not subject to Rule 15(d); it does not mean that such a filing is not permitted. As discussed below, Attorney Lee's Supplemental Declaration does not alter the Court's analysis of the core, threshold issue: standing. But his Motion for permission to file it, Dkt 56, is **GRANTED**, and the Court has considered the Declaration and its Exhibits, Dkt. 56-1.

The remaining issues are addressed in turn.

## II. DISCUSSION

### A. The State Intervenor-Defendants' Motion to Dismiss is GRANTED.

The State Intervenor-Defendants seek dismissal of Gibson's claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because Gibson's complaint does not present a live case or controversy.

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise

under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *United Transp. Union v. Burlington N. Santa Fe R. Co.*, No. C06-5441RBL, 2007 WL 26761, at *2 (W.D. Wash. Jan. 2, 2007), *aff'd*, 528 F.3d 674 (9th Cir. 2008).

The State Defendants argue that Gibson cannot meet his burden to establish that he has Article III standing. Thus, they argue, his claims are not justiciable, and this Court does not have subject matter jurisdiction over them. This issue and these arguments were the subject of the Court's prior Orders denying Gibson's Motions for a TRO, Dkt. 6, and for Reconsideration, Dkt. 16. The Defendants argue, and the Court agrees, that nothing that has occurred in the interim changes the analysis in those Orders.

The threshold question in *every* federal case, even those seeking injunctive relief, is whether the court has jurisdiction over an actual case or controversy as contemplated by Article III of the Constitution. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). For this reason, a federal court is obligated to dismiss an action "[i]f [it] determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3).

A federal court is presumed to lack subject matter jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994). As the party invoking federal jurisdiction, Gibson bears the burden of establishing this Court's subject matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To establish Article III standing, a plaintiff must show that he

(1) suffered an injury in fact that is (2) fairly traceable to the alleged conduct of the defendants, and that is (3) likely to be redressed by a favorable decision. *Id*. A plaintiff has standing to sue only if he presents a legitimate "case or controversy," meaning he presents issues that are "definite and concrete, not hypothetical or abstract." *Thomas*, 220 F.3d at 1139. A plaintiff facing a threat of future injury "has standing to sue if the threatened injury is certainly impending, or there is a substantial risk" that the injury will occur. *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). The plaintiff must demonstrate "a genuine threat that the allegedly unconstitutional law is about to be enforced against him." *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983).

Accordingly, courts in this Circuit consider three factors to determine whether a pre-enforcement challenge to a law is ripe and justiciable: (1) "whether the plaintiff [has] articulated a 'concrete plan' to violate the law in question"; (2) "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings"; and (3) "the history of past prosecution or enforcement under the challenged [law]." *Thomas*, 220 F.3d at 1139.

Gibson initially sued to obtain an injunction based on his concrete plan to hold a prayer protest on December 5. He intended to have more than 20 singing attendees, in violation of the then-applicable COVID-19 guidance. Gibson's allegations and the evidence supporting his claim of a specific threat relied primarily on his claim that Defendant City Attorney Young had taken a "special interest" in him, for reasons unrelated to his planned protest or the guidance. He alleged the City had a history of

prosecution based primarily on the arrest of Kelly Carroll, who did not organize a religious[1] event or protest, and who was not ultimately prosecuted.

Because Gibson could establish neither a specific threat of enforcement nor any history of prosecution, the Court denied the TRO under *Thomas*. The event took place and Gibson was not cited, arrested, or prosecuted. Gibson subsequently amended his complaint as a matter of right, Dkt. 15, and now seeks to amend again, Dkt. 36. Gibson's allegations about the then-pending December 5 event remain unchanged in all iterations of his complaint. *See* Dkt. 36 at ¶ 6.3 ("defendants are very likely to arrest or prosecute Mr. Gibson for participating in the planned protest prayer, as evidenced by the fact that defendants have already done so in another matters [sic].")

However, Gibson's allegations about Young and Carroll are not the focus of his opposition to the Defendants' motions. His Response to the Motion to Dismiss does not contend that any Defendant specifically threatened to prosecute him or any similarly situated person for violating the guidance by holding a protest prayer. He does not argue or demonstrate that any Defendant has any history of enforcing the guidance against anyone, much less that anyone has selectively targeted him or people like him. He instead emphasizes that "standing is determined at the outset of the litigation, that is, at the time

[1] Gibson's Amended Complaint added the allegation that Kelly Carroll's protest rally "began with an opening prayer and included scripture reading from the Christian bible." Dkt. 15 ¶ 4.193. The City Defendants point out that Gibson's Response to their summary judgment motion, Dkt. 38 at 3, suggests that the language about the religious nature of Carroll's protest was added *by the City* to *Carroll's* (criminal) complaint, which is not true.

the complaint is filed." Dkt. 37 at 3 (citing *White v. Lee* 227 F.3d 1214, 1243 (9th Cir. 2000)).

Gibson argues that he can demonstrate the required injury in fact in either of two ways. First, that he intends to engage in conduct which is arguably affected by the policy and that he faces a credible threat that the policy will be enforced against him if he does. Dkt. 37 at 8 (citing *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 590-91 (7th Cir. 2012) (*quoting Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, (1979))). Second, he claims he was injured because the guidance had an objectively reasonable chilling effect on his speech, demonstrated by his self-censorship. *Id.* at 9 (citing *Bell v. Keating* 697 F.3d 445, 454 (7th Cir. 2012)). He argues that he need not show a threat of imminent enforcement where he can instead show actual injury.

Gibson argues that he had actual injury, and thus standing when he sued, even if the current guidance does not prohibit the events like those he has been holding and intends to continue holding. He claims Defendants' arguments about the prior uneventful protest are more appropriately considered under the mootness doctrine.[2] Gibson reiterates that at the outset, he had a concrete plan to hold a protest that was proscribed by the COVID-19 guidance then in place—guidance that imposed greater restrictions on virtually all gatherings than the guidance in place on December 5, or today.[3] He now

---

[2] Gibson's mootness arguments are in his Response, Dkt. 38, to the City Defendants' Motion for Summary Judgment, Dkt. 31, though the City argues Gibson lacks standing as a matter of law, not that his claims are moot.

[3] The State "assumes" for purposes of its motion that when he sued, Gibson's planned December 5 event would have violated the then-in-place restrictions applicable to events in public spaces, and that it would have been permitted if held on a religious institution's own

argues that the existence of guidance that invades his legally-protected interest suffices as actual injury in fact under the First Amendment's Establishment Clause, its Free Exercise Clause, and its Free Speech Clause. Dkt. 37 at 10, 11, and 14. As to the former, Gibson argues the applicable guidance differentiated between indoor and outdoor religious practices and that he has suffered psychological distress because the government endorses one religious practice while condemning the other. *Id.* at 8, 15.

The State Intervenor-Defendants point out that Gibson has not asserted, and does not seek to assert in his proposed amended complaint, an Establishment Clause claim. Rather, his complaints each assert only two "causes of action": a claim seeking an injunction prohibiting the defendants from "selectively targeting" him for violating the COVID-19 guidelines (citing the First, Fifth, and Fourteenth Amendments, and 42 U.S.C. §§ 1983, 1985, and 1988), Dkt. 36 at 64, and a similar claim seeking an injunction prohibiting defendants from arresting or prosecuting him for "participating in his planned protest prayer," *id.* at 66.

Gibson claims the mere existence of guidance infringing on his religious plans is a constitutional injury sufficient to establish standing, and the State persuasively argues that he is wrong. The *Thomas* court and others have plainly rejected that position. Dkt. 41 at 4 (citing *Thomas* at 1149; *Stoianoff* at 1223 ("the mere existence of a statute is not sufficient to create a case or controversy within the meaning of Article III.")).

---

property. Dkt. 41 at 6 n.3. It also correctly asserts that "[a]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* at 13 (citing *Seven Words LLC v. Network Sols*., 260 F.3d 1089, 1095 (9th Cir. 2011)).

The State also correctly points out that nothing in the flurry of Supreme Court COVID-19 opinions[4] over the past year alters the well-established test for standing to assert a pre-enforcement challenge to a law. Justice Kavanaugh's concurrence in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 74 (2020)—a case that did not involve a standing challenge—stated only that "the state does not deny that the applicants face an imminent injury *today*." *Id*. Unlike the Defendants here, the defendants in that case had specifically threatened to "close institutions down" if "certain religious communities would not agree" to enforce the COVID-19 rules. *Agudath Israel of Am. v. Cuomo*, 979 F.3d 177, 183 (2d Cir. 2020); *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 723 F. Supp. 1467, 1479 (S.D. Fla. 1989) (ordinance specifically targeted plaintiffs to "force them out of Hialeah"), *aff'd* 936 F.2d 586 (11th Cir. 1991), *rev'd* 508 U.S. 520 (1993).

Gibson next argues that he has standing to assert free speech claims because the Governor's COVID-19 guidance had a chilling effect on his speech and claims the restrictions have caused him spiritual harm by dissuading others who would have otherwise participated in his protest.

The State Intervenor-Defendants counter that the "chill" must be objectively reasonable, that is, there must be a "credible threat of prosecution." Dkt. 41 at 5 (citing *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011); *Babbitt*, 442 U.S. at

---

[4] Gibson filed an LCR 7(n) Notice of Supplemental Authority, Dkt. 55, directing the Court's attention to *Tandon v. Newsom*, ___ U.S. ___, 141 S.Ct. 1294 (2021). *Tandon* includes a concise summary of the Supreme Court's recent holdings in this area. But neither it nor the cases it catalogues alter the Court's standing analysis.

298). "Neither self-censorship nor subjective chill is the functional equivalent of a well-founded fear of enforcement." *Id.* at 5–6 (citing *Humanitarian Law Project v. U.S. Treasury Dep't.*, 578 F.3d 1133, 1142 (9th Cir. 2009) (other citations omitted)).

Other than his conclusory claim that the Defendants have "selectively targeted him" for prosecution, and his similar claim that the guidance was "specifically aimed" at (outdoor) religious gatherings like the ones he has planned and carried out, Dkt. 37 at 14–15, Gibson does not demonstrate that he faces a credible threat of enforcement or prosecution. He cannot; it is undisputed that neither he nor any other religious protester has been the subject of any enforcement action by the State, and certainly not by the City Defendants, despite the fact he has held "no fewer than nine" prayer protests since he sued. *Id.* at 17.

The import of this fact is not altered by Gibson's claim that the restrictions themselves contain an express threat of adverse governmental action in response to noncompliance, or by his characterization of the Governor's actions as the result of "extreme fervor and concern" over the conduct regulated by the guidance. *Id.* at 18. Gibson has not established any specific, credible threat of prosecution, or any history of enforcement, and he does not have standing to assert a pre-enforcement challenge under *Thomas*, as a matter of law. *See Harborview Fellowship v. Inslee*, No. 20-cv-5518RJB, 2021 WL 662390 at *5–6 (W.D. Wash., February 19, 2021) (dismissing pre-enforcement challenge to COVID-19 guidance without prejudice for lack of standing where there was no threat or history of enforcement).

Gibson cannot establish that he has Article III standing to assert a pre-enforcement challenge to the Governor's COVID-19 guidance. His claims are not ripe or justiciable, and the Court does not have subject matter jurisdiction over them. The State Intervenor-Defendants' Motion to Dismiss under Rule 12(b)(1), Dkt. 29, is therefore **GRANTED** and Gibson's claims against them are **DISMISSED**.

Because this issue is dispositive, the Court need not address the State Intervenor-Defendants' alternate arguments that the matter is moot and that Gibson has failed to state a plausible claim under Rule 12(b)(6).

**B. Gibson's Motion for Leave to Amend is DENIED.**

Under Rule 12(b)(6), a court should permit a plaintiff to amend his complaint before dismissing it with prejudice, even if he does not ask for that opportunity. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988). Gibson moved for leave to amend while the State's Rule 12(b)(1) Motion to Dismiss was pending, possibly in an effort to moot[5] that motion.

Leave to amend a complaint under Fed. R. Civ. P. 15(a) "shall be freely given when justice so requires." *Carvalho v. Equifax Info. Services, LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). This policy is "to be

---

[5] An amended complaint properly filed while a motion to dismiss is pending generally moots the motion to dismiss. *See, e.g.*, *Williamson v. Sacramento Mortg., Inc.*, No. S-10-2600KJM-DAD, 2011 WL 4591098, at *1, (E.D. Cal., October 11, 2011) (internal citations omitted).

applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). In determining whether to grant leave under Rule 15, courts consider five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Among these factors, prejudice to the opposing party carries the greatest weight. *Eminence Capital*, 316 F.3d at 1052.

A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Gaskill v. Travelers Ins. Co.*, No. 11-cv-05847RJB, 2012 WL 1605221, at *2 (W.D. Wash. May 8, 2012) (citing *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997)).

Gibson's Motion to Amend claims only that amendment will not prejudice the Defendants; it does not address futility, and it does not claim or explain that the proposed amendment addresses the deficiencies this Court previously identified in denying Gibson's motions for injunctive relief or his continued lack of standing, discussed above. Both the City and the State Defendants argue that Gibson's proposed amendment would be futile because the amended pleading suffers from the same fatal flaw as his existing amended complaint: he does not have standing to assert his claims

Gibson's Reply, Dkt. 44, repeats his claim that he had standing to challenge the Governor's COVID-19 guidance when he sued, but it too does not claim that proposed amended complaint remedies any of the deficiencies the Court identified in his prior

complaints. Gibson's lack of standing and the justiciability of his claims are resolved above. Because his proposed amendment is futile, Gibson's Motion for Leave to Amend, Dkt. 36, is **DENIED**.

**C. The City Defendants' Motion for Summary Judgment is GRANTED.**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871

(1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. 242, 248 (1986).

The City Defendants seek summary dismissal of Gibson's claim for a free-standing, perpetual injunction immunizing him from arrest or prosecution, arguing he does not have standing to assert it as a matter of law. Dkt. 31 at 2. Their arguments for dismissal under Rule 12(h)(3) are not materially different than the State Defendants' arguments in support of its motion to dismiss under Rule 12(b)(1), described above. However, they seek summary judgment, and their motion tests Gibson's evidence, not the plausibility of his allegations.

The City argues that the undisputed facts show (1) none of its officers have arrested anyone for violating COVID-19 Emergency Orders, (2) no one has been referred for a charging decision since Clark County advanced to Phase 2, (3) the only cases that were referred for possible prosecution occurred during a quarantine order that has long since expired, (4) Kelly Carroll's case is not relevant to Gibson or his lawsuit, and (5) Gibson has never been arrested or referred for prosecution by any City Defendant. They also emphasize that Gibson's prayer protests have continued despite the lack of a TRO or Preliminary Injunction, without incident. Dkt. 31 at 7; Dkt. 39 at 4.

Other than his argument that the revised Guidance did not moot his claims, Gibson's Response to the City Defendants' Motion for Summary Judgment is not materially different than his Response to the State Defendants' Motion to Dismiss for lack of Article III standing. Dkts. 37, 38.

Gibson argues that the Defendants rely partly on the fact the guidelines were later revised and relaxed, and that such claims are more appropriately considered under the mootness doctrine. Dkt. 37 at 7. He correctly argues that voluntary cession of an illegal activity does not necessarily moot a case. *Id.*; *see also Rosemere Neighborhood Ass'n v. U.S. Environmental Protection Agency*, 581 F.3d 1169, 1172 (9th Cir. 2009) (voluntary cessation of illegal activity in response to pending litigation does not moot a case, unless the party alleging mootness can show that the allegedly wrongful behavior could not reasonably be expected to recur) (other citations omitted).

As the City Defendants point out, though, a plaintiff's concrete plan to violate a law is only one prong of the three-part *Thomas* test. Gibson has no evidence of a specific threat of prosecution, and he has no evidence of a history of enforcement of the COVID-19 guidelines against religious protestors (or anyone else). Gibson repeats his allegation that City Attorney Young threatened to "selectively target" Gibson and others who conducted religious protests, but there is no evidence in support of that claim. Nor is there evidence that any City Defendant has a history of enforcement or prosecution, at all, much less a history of prosecuting religious protestors. Gibson's revised allegations about the nature of Kelly Carroll's protest are not evidence to the contrary.

Gibson has lacked standing to sue the City Defendants since November 2020, when he sued, and he lacks standing today. For the reasons discussed above, and in the Court's prior Orders, the City Defendants' Motion for Summary Judgment, Dkt. 31, is **GRANTED**, and all of Gibson's claims against those defendants are **DISMISSED**.

**D. Gibson's Motion for a Preliminary Injunction is DENIED.**

The purpose of a TRO is "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing [on the preliminary injunction application], and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423 (1974); *see also Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130–31 (9th Cir. 2006). For a court to grant a preliminary injunction, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The last two factors merge if the government is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). When considering whether to grant this "extraordinary remedy, . . . courts must balance the competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular regard to the public consequences." *Winter*, 555 U.S. at 24.

The Ninth Circuit continues to apply one manifestation of the "sliding scale" approach to injunctions in which "a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1131–32. However, an injunction cannot issue even when there is a

strong likelihood of success on the merits if there is just a mere possibility of irreparable harm. *Id.* at 1131 (explaining the holding in *Winter*, 555 U.S. at 22).

Gibson's Motion for a Preliminary Injunction again asks the Court to enjoin the State and the City from enforcing the COVID-19 guidance and restrictions against him. Because he does not have standing, discussed above, and because the Court has granted the Defendants' dispositive motions, Gibson's claim for injunctive relief is moot. He also cannot demonstrate that he is likely to succeed on the merits, or that he will suffer irreparable harm in the absence of an injunction.

His motion for a preliminary injunction, Dkt. 56 is **DENIED**.

## III. CONCLUSION

The Defendants accurately describe this matter as a case in search of a controversy. There has been no specific or credible threat of enforcement, and there is no history of enforcement. Gibson's claims were never ripe, and he did not and does not have standing to assert them under *Thomas*. This Court does not have subject matter jurisdiction over Gibson's claims. Nothing in any recent COVID-19 opinion changes that conclusion.

The State Defendants' Motion to Dismiss Gibson's operative complaint, Dkt. 29, is **GRANTED.** Gibson's Motion to Amend his Complaint a second time, Dkt. 36, is **DENIED**. The City Defendants' Motion for Summary Judgment, Dkt. 31 is **GRANTED.** Gibson's Motion for a Preliminary Injunction, Dkt. 46, is **DENIED**. Gibson's Motion to supplement the declaration, Dkt. 56, is **GRANTED.**

The matter is **DISMISSED**.

The Clerk shall enter a Judgment consistent with this Order and close the case.

**IT IS SO ORDERED.**

Dated this 7th day of June, 2021.

BENJAMIN H. SETTLE
United States District Judge